# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## EASTERN DIVISION
## NO: 4:13-MC-00002

|  |  |  |
|---|---|---|
|  | ) |  |
| IN RE: | ) | **ORDER** |
| Daniel S. Schwei, Seth Morgan Wood, | ) |  |
| Jeremy M. Wilson, and Thomas S. Babel | ) |  |
| _____ | ) |  |

This cause comes before the Court upon a hearing held April 11, 2013 to allow attorneys Daniel S. Schwei, Seth Morgan Wood, and Thomas S. Babel to show cause why they should not be sanctioned for their failure to comply with an order of this Court directing the parties to file a pretrial order in the case of United States v. Rouseco, Inc., No. 4:11-CV-35-F ("*Rouseco*"). Attorney Jeremy M. Wilson was previously excused from the hearing to show cause and any further proceedings in this matter. (DE-8). As explained herein, the Court finds no grounds to sanction attorney Seth Morgan Wood. The Court likewise declines to impose sanctions against attorney Thomas S. Babel. The Court finds grounds and imposes monetary sanctions in the amount of $200.00 against attorney Daniel S. Schwei.

## I.    BACKGROUND

The *Rouseco* action began with a complaint filed in this Court on March 1, 2011. The Honorable Senior Judge James C. Fox was assigned to preside over the case.

1

Government attorneys Daniel Schwei and R.A. Renfer, Jr. signed the complaint on behalf of the plaintiff United States of America. Assistant United States Attorney Seth Morgan Wood filed notice of substitution on March 17, 2011, requesting that attorney Renfer be removed from the docket and that he be substituted as counsel. Attorney Schwei entered notice of appearance on March 29, 2011. Attorney Babel of the law firm Ward and Smith first appeared in the *Rouseco* action by filing a motion for extension of time to file an answer on behalf of the defendant Rouseco, Inc. on April 7, 2011.

As the *Rouseco* case progressed, trial was scheduled on several occasions, but was each time continued to a later term of court. On February 13, 2013, the Court issued a notice informing the parties that trial of the case would take place on April 1, 2013. In conjunction with the notice of hearing, the undersigned entered an order on February 14, 2013 scheduling the pretrial conference for Tuesday, March 19, 2013 and directing the parties to submit a joint proposed pretrial order. The February 14th order instructed the parties to file their proposed pretrial order no later than Tuesday, March 12, 2013 and further provided that "[t]his deadline will not be extended absent the filing of a motion demonstrating good cause for the extension." The order cautioned that "[f]ailure to submit a joint proposed pre-trial order by Tuesday, March 12, 2013, will result in the cancellation of the pre-trial conference. If the pre-trial conference is canceled for this reason, the undersigned may require the parties to show cause why they should not be sanctioned."

On March 6, 2013, attorney Schwei filed an opposed motion to stay "all pre-trial

and trial proceedings" pending resolution of the plaintiff's motion for summary judgment. The motion to stay remained pending before Judge Fox on March 12, 2013, when the proposed pretrial order was due. However, the parties did not submit a proposed pretrial order, nor did they seek an extension of time to file such order. On March 18, 2013, Judge Fox issued an order denying the government's motion for summary judgment and remanding the case to the reviewing agency for further administrative proceedings. Judge Fox also denied the government's motion to stay as moot.

On March 19, 2013, the undersigned held a hearing at the time originally scheduled for the pretrial conference. The purpose of the hearing was to learn from the parties why they had failed to comply with the pretrial conference order entered February 14, 2013. Attorney Wood was present on behalf of the government and Joe Schouten of the law firm Ward and Smith appeared on behalf of defendant Rouseco. Attorneys Schwei and Babel did not attend the hearing. At the hearing, Mr. Wood explained the *Rouseco* action was "run out of Main Justice" and that his role was "extraordinarily restricted." *Rouseco* Pretrial Conf. Hr'g Tr. 10:14-15, DE-85. When asked whether he had "any contact with the attorney at Main Justice to make him aware of our Local Rule and his and your obligations under it," Mr. Wood responded, "Not to that degree of specificity . . . ." *Id.* at 11:1-3. When asked to explain, Mr. Wood made no reply.

The undersigned thereafter issued an order to show cause directing counsel of record for the *Rouseco* action to appear for hearing on March 28, 2013, later continued to April 11, 2013. (DE-1). Attorney Babel subsequently filed an affidavit stating that he

3

"alone was responsible for the failure of Defendant to file, or to ensure that a Pretrial Order in this action was filed" and that his law partner, Jeremy Wilson, "was not involved in the decisions concerning the Pretrial Order and Pretrial Conference." Thomas S. Babel Aff. ¶ 22, Ex. A, DE-5-1. The undersigned therefore excused attorney Wilson from further proceedings in this matter. (DE-8).

Mr. Babel's affidavit also explains the circumstances behind his failure to file a pretrial order. In his affidavit, Mr. Babel notes that on March 11, 2013, the day before the pretrial order was due, the courtroom deputy for Judge Fox contacted him via e-mail to schedule a telephonic conference with Judge Fox and opposing counsel regarding "the various motions pending" in *Rouseco*. Babel Aff. ¶ 9. Mr. Babel "assumed that during the conference with Judge Fox, we would discuss the pending Motion for Summary Judgment and Plaintiff's Motion to Stay Trial Pending Resolution of Summary Judgment." *Id.* at ¶ 10. Mr. Babel did not discuss a pretrial conference order with opposing counsel, and no draft pretrial order was sent to him, as required by Local Civil Rule 16.1(b)(2). *Id.* at ¶¶ 11, 19. However, Mr. Babel "did not find this unusual based on Plaintiff's consistent position in this action that a trial was unnecessary, that this action should be resolved through summary judgment, and the pending Motion to Stay Trial Pending Resolution of Summary Judgment." *Id.* at ¶ 11.

The telephonic conference with Judge Fox took place on Wednesday, March 13, 2012, the day after the pretrial conference order was due. *Id.* at ¶ 12. During the conference, Judge Fox agreed that trial of the action was unnecessary and indicated that he

would rule on all outstanding motions by Monday, March 18, 2013. *Id.* Mr. Babel "assumed based on the representations of Judge Fox that there would not be a Pretrial Conference in this matter." *Id.* at ¶ 13.

Mr. Babel states that he "did not intend to violate the Court's Pretrial Order and/or Local Rule 16.1." *Id.* at ¶ 19. Given the government's position that trial of the case was inappropriate, as well as the motion to stay trial pending resolution of summary judgment, Mr. Babel was "unsure what to file, if anything, with the Court concerning the Pretrial Order." *Id.* And based on the telephonic conference with Judge Fox on March 13, 2013, Mr. Babel "assumed there would not be a Pretrial Conference, and assumed, therefore, that a Pretrial Order would be unnecessary." *Id.* Finally, Mr. Babel notes that "[t]his case presented a unique situation for [him]" and that the "failure to file a Pretrial Order resulted more from the unique situation in this matter, and [his] confusion when faced with this unique situation." *Id.* at ¶ 20.

Attorney Daniel Schwei filed a declaration regarding the pretrial conference order. Daniel Schwei Decl., DE-13-1. In his declaration, Mr. Schwei states that he "was aware of the March 12, 2013 deadline for submission of the proposed pre-trial order." Schwei Decl. ¶ 13. Mr. Schwei explains further:

> 14. During the week of March 4, 2013, when there had not yet been a ruling on the motion for summary judgment, I determined it was prudent to file a motion to stay all trial and pre-trial proceedings, which necessarily included the filing of the pre-trial order. I sent a draft of this stay motion to opposing counsel on Tuesday, March 5, 2013. Opposing counsel was unable to review the draft motion that day, but informed me on Wednesday, March 6, 2013 that Rouseco

5

opposed the motion. I filed the stay motion that same day. *See* ECF No. 76. In my view, this stay motion constituted "the filing of a motion demonstrating good cause for the extension" of the deadline for submitting the proposed pre-trial order, consistent with the instructions in Judge Webb's pre-trial conference order.

15. Although the stay motion was titled "Motion to Stay Trial Pending Resolution of Summary Judgment," the motion clearly stated that the United States was seeking a stay of both the trial *and* pre-trial proceedings. *See id.* at 1 ("Plaintiff, the United States of America, respectfully requests that all pre-trial and trial proceedings in this case be stayed until after the Court has resolved the United States' pending motion for summary judgment[.]"); *see also* Proposed Order (ECF No. 76-1) (stating that upon granting the motion "all pre-trial and trial proceedings in the above-captioned case shall be stayed until after the Court resolves the United States' pending motion for summary judgment").

16. In my view, the filing of this stay motion fulfilled my obligation set forth in Judge Webb's pre-trial conference order regarding the submission of the proposed pre-trial order. *See* ECF No. 72 at 1 ("The proposed order must <u>arrive</u> in chambers and be filed no later than Tuesday, March 12, 2013. *This deadline will not be extended absent the filing of a motion demonstrating good cause for the extension*." (second emphasis added)).

However, as the motion to stay remained pending, Mr. Schwei "determined to call Judge Fox's chambers for guidance on Monday, March 11, 2013 if he had ruled by the close of business that day." *Id.* at ¶ 17. On the afternoon of March 11, 2013, the day before the pretrial conference order was due, Mr. Schwei received the e-mail from Judge Fox's courtroom deputy requesting a telephone conference. Because the e-mail stated

that Judge Fox was currently reviewing "the various motions that are pending"—which included the United States' stay motion—and that Judge Fox had "a few questions about this matter," I believed it was neither necessary nor advisable for me to file a pre-trial order with the Court.

6

Doing so might have been contrary to Judge Fox's views about how this case should proceed, which I believed would be discussed during the telephone conference scheduled for March 13, 2013. In addition, I believed that filing a proposed pre-trial order might have been viewed by the Court, or by the defendant, as inconsistent with the United States' position that this case should be resolved on the pending motion for summary judgment and not through a trial.

*Id.* at ¶ 19. During the telephone conference with Judge Fox on March 13, 2013, "[n]othing was raised or discussed . . . regarding the pending stay motion or the parties' proposed pre-trial order." *Id.* at ¶ 20. Rather, Judge Fox asked

whether the parties were going to reach a settlement of this matter. When the parties indicated that a settlement was not imminent, Judge Fox indicated that he was going to rule on all of the pending motions on Monday, March 18, 2013, if the parties did not settle the case before that date.

*Id.*

As a result, Mr. Schwei believed that

this matter would be conclusively resolved by March 18, 2013. Therefore, it was my understanding that there would not be any pre-trial conference held on March 19. For all of these reasons, I believed it was neither necessary nor appropriate to file a joint pre-trial order with the Court. I had multiple conversations and e-mail exchanges with opposing counsel in the days both before and after the conference with Judge Fox, and at no point did opposing counsel suggest to me that it was necessary for the parties to file a proposed pre-trial order with the Court by March 12, 2013, or that the filing of the motion to stay was insufficient to comply with Judge Webb's order regarding the pre-trial conference.

*Id.* at ¶ 21. Mr. Schwei further notes that attorney Wood "had no involvement in [his] decisions regarding the joint pre-trial order or the pre-trial conference." *Id.* at ¶ 35.

A declaration filed by attorney Wood is consistent with Mr. Schwei's assertion that Mr. Wood had little to no involvement in the pretrial proceedings. Seth Morgan Wood

7

Decl., DE-16-1. Mr. Wood notes that when the pretrial conference order issued, he contacted Mr. Schwei via e-mail to determine whether he needed any assistance. Wood Decl. ¶ 8. Mr. Schwei replied that he "intended to handle everything personally and did not require any assistance." *Id.* Mr. Wood contacted Mr. Schwei by e-mail again on March 6, 2013 "indicating that [his] office was available if needed." *Id.* On March 12, 2013, Mr. Wood telephoned Mr. Schwei to ask if he should participate in the teleconference with Judge Fox planned for the following day. *Id.* at ¶ 9. Mr. Schwei responded that he "saw no need" for attorney Wood's participation. *Id.* Mr. Wood states that he "was not involved in the decisions concerning the pretrial order and pretrial conference." *Id.* at ¶ 12.

The hearing to show cause was initially scheduled to take place on March 28, 2013. Mr. Babel moved to continue the hearing on the grounds that he was would be on vacation the week of March 28th with his family celebrating his parents' fiftieth wedding anniversary. Mot. Continue, DE-2. The motion to continue was denied, and Mr. Babel appealed the denial of the motion to continue to Judge Fox. In his order denying the appeal, Judge Fox summarized the procedural posture of the appeal as follows:

> On February 14, 2013, Judge Webb entered an order in Case No. 4:11-CV-35-F, which stated that a pretrial order must be submitted in that case no later than March 12, 2013, and that if the parties failed to do so they may be required to show cause why they should not be sanctioned. [Case No. 4:11-CV-35-F, DE-72.] No subsequent order relieved the parties of this obligation, and no action of the court indicated that the parties should not have been prepared to proceed to trial as scheduled.
> The court must have the ability to control its own docket and to have its orders obeyed. Therefore, Mr. Babel's motion [DE-5] is DENIED.

8

Order Denying Appeal, Mar. 21, 2013, DE-7.

On March 26, 2013, at 5:23 p.m., the government filed a response on behalf of attorneys Schwei and Wood asserting *inter alia* that, as a magistrate judge, the undersigned was without jurisdiction or authority to preside over the hearing to show cause. Resp., DE-14. The undersigned first learned of the government's filing on the afternoon of March 27th, the day before the scheduled hearing. Because this issue had not been previously raised, the hearing to show cause was rescheduled for April 11, 2013 to permit the undersigned sufficient time to consider the question of jurisdiction before proceeding with the hearing. Order, Mar. 27, 2013, DE-15.

On April 8, 2013, attorney Wood filed a declaration clarifying his involvement in the *Rouseco* action. Shortly before the hearing to show cause began on April 11, 2013, the undersigned informed attorney Wood in open court that, based on the information set forth in his newly-filed declaration, the undersigned found no grounds to sanction Mr. Wood. Accordingly, attorney Wood was excused from further proceedings in this matter. [1] Attorneys Schwei and Babel attended the hearing and were represented by counsel. Following argument by counsel, attorney Babel addressed the Court directly as follows:

---

1. When first questioned at the hearing on March 19, 2013 about the steps he took to ensure that Mr. Schwei was aware of his duty to comply with the Court's Local Rules and submit the pretrial order, Mr. Wood offered little explanation of his actions. However, Mr. Wood's declaration states that he contacted Mr. Schwei regarding the February 14th order and was assured that Mr. Schwei "intended to handle everything personally and did not require any assistance." Attorney Schwei's declaration confirms that Mr. Wood's participation in this case was extremely limited. The undersigned was therefore persuaded that, like attorney Jeremy Wilson, attorney Wood should not be held accountable for the parties' failure to submit a pretrial order in the *Rouseco* action.

9

Your Honor, if it please the Court, Tom Babel from Ward and Smith on behalf of [Rouseco], Inc. First, let me apologize, Your Honor, if I stumble a little bit. I will say that in my 15 years of practice, this is the most nervous I've ever been in front of a court.

I don't want to rehash what Mr. Rickner has said or what's said in my affidavit other than to add, Your Honor, if there's anything that I have done or have not done before this court that you believe was a violation of a rule, I apologize for that. That was not my intent.

As I said in my affidavit, there's nothing I did that I believe was an intentional act to violate a standing order of the Court, and I think my record in my practice stands for that.

I've never been accused of – I've never been involved in anything like this. I've never been accused of a rule violation. I think, frankly, only one time in my career have I ever had a judge even raise his voice to me, and I realize in hindsight I was making a mistake in that particular circumstance.

All I can say, Your Honor, is, as I said in my affidavit, this was an extremely unique position for me in this case. It was an administrative review case. The government's position all along has been "We're stuck with an administrative record; this case should be decided by summary judgment." I would agree with them.

That's primarily what the law says, and ultimately what happened in this case, and what I believe would happen in this case, that it would be decided by a dispositive motion. I just put that in the context of that particular circumstance.

I've never had a situation where I was a defendant where I did not have a pretrial conference with opposing counsel and not be provided with a draft order. I'm not here to blame Mr. Schwei at all. I believe Mr. Schwei is an extremely professional lawyer. We've had extremely good dealings as this case has proceeded. I only point that out, just as Mr. Rickner said, looking at the law and what the standard is to explain my conduct.

Putting that in the context -- with the context that there really is no reason for a trial in the case of an administrative review, I think that helps explain my actions.

Then when that Monday rolled around, when Ms. Fox [sic] sent us that email from Judge Fox's chambers telling us that Judge Fox wanted to speak with us Tuesday or Wednesday about the pending motions, it was my belief that we were going to discuss the pending motion to stay as well as the pending motion for summary judgment.

As I conceded to your clerk when I spoke to him on Monday, I admit during that conversation with Judge Fox -- which did happen on Wednesday -- I did not ask him -- which I should have in hindsight – "Your Honor, what

10

should we do about the pretrial and the pretrial order?" I did not do that. I admit I did not do that.

And also, Your Honor, looking -- in a situation like this, I'm sure you understand, when your conduct is being questioned you go back and you do a re-examination of what you did and then take an honest look at "Did I do something wrong or could I have done something different?" I've spent many sleepless nights going over everything that's happened in this case, and I can tell the Court honestly that I don't think I would've done anything differently, other than I would've picked up the phone and called your chambers and asked them on that Tuesday "What should we do? Here's the situation. What should we do? Can you please provide us some guidance?"

I did not do that, and I admit I did not do that, other than to say that in that conference with Judge Fox – in that conference with Judge Fox, if Judge Fox had told us or made it clear in his comments to us that this case was going to proceed beyond Tuesday of the pretrial, I certainly would've hung up that phone and called Mr. Schwei and said "We need to do something about the pretrial order."

What would've been in that pretrial order? I'm not sure what would've been in it because it's an administrative review case, but I can tell the Court honestly that's what I would've done, but when I hung up the phone, my belief, based on Judge Fox's comments, was that this case was going to end on Monday.

I agree with you it did not excuse the fact that we had not filed a particular pretrial order, other than to say that I just wanted to explain to the Court that was the mentality in my mind of what was going on, and if I believed that I absolutely needed to file -- not "absolutely" – that's probably the wrong word -- but that I should've filed a pretrial order.

I would've made sure something got done, but I did not. In the whole context of everything going on I did not think we needed to do that, and if Your Honor believes I was wrong in that belief, then I'm here to I guess accept whatever punishment the Court would put on me.


Show Cause Hr'g Tr. 30-34, DE-18. Attorney Schwei likewise addressed the Court:

Good morning, Your Honor. Daniel Schwei for the U.S. Department of Justice. I wanted to speak here this morning because -- I think the specific explanations and step-by-step actions that were taken in this matter are laid out in my declaration, but I thought it was important to address Your Honor this morning just to stress that the United States, and me personally, take all orders from any court very seriously, including this court and Judge

Fox.

       I took those orders very seriously and conscientiously attempted to comply with those orders each step along the way, and I believe that's set forth in my declaration, but also in my declaration is an important point, which is in hindsight I recognize that more could have been done.

       I think my declaration shows that there was no willfulness, or even neglect, on my part, but I agree with Mr. Babel that certainly there were actions that could have been done to clarify this earlier, and in hindsight I recognize that my actions could be construed as deliberately flouting the authority of this court or its orders, and I sincerely apologize for that impression.

       That was never my intent, and that is certainly not my role[2] as an attorney or representative of the United States to leave any court, including Your Honor, with the impression that I have not conscientiously followed any of its orders.

*Id.* at 35-36.   At the conclusion of the hearing, the parties were informed that, should they wish to file any supplemental memoranda, they could do so within twenty days of receipt of the hearing transcript.   *Id.* at 39:23-25.   The government timely filed a supplemental memorandum in response on behalf of attorney Schwei.   Suppl. Resp., DE-19.

## II.   <u>LEGAL STANDARDS</u>

### A.  <u>Sanctions for Violation of Pretrial Conference Order</u>

Rule 16 of the Federal Rules of Civil Procedure addresses scheduling orders and the management of pretrial conferences.   Section (f) of Rule 16 provides as follows:

> **(f) Sanctions.**
>
> (1) *In General*.   On motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney:

---

2. The government believes that Mr. Schwei actually said "goal" rather than "role."   Suppl. Resp. 4 n.4, DE-19.

(A)     fails to appear at a scheduling or other pretrial conference;

(B)     is substantially unprepared to participate--or does not participate in good faith--in the conference; or

(C)     fails to obey a scheduling or other pretrial order.

(2) *Imposing Fees and Costs*. Instead of or in addition to any other sanction, the court must order the party, its attorney, or both to pay the reasonable expenses--including attorney's fees--incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust.

Rule 16 authorizes the imposition of sanctions for an attorney's failure to take actions or to file certain documents.  Simpson v. Welch, 900 F.2d 33, 36-37 (4th Cir. 1990) (concluding that district court could not impose sanctions pursuant to Rule 11, but had "ample grounds under Rule 16(f) for imposing sanctions on appellant's counsel" for his failure to comply with court orders); Harris v. Marsh, 679 F. Supp. 1204, 1389 n. 278 (E.D.N.C. 1987) (noting that "Rule 11 deals with all motions, pleadings and documents signed by an attorney or party in a lawsuit; Rule 16 relates to all aspects of pre-trial management, including numerous procedures and discussions not necessarily memorialized in a writing."), *reversed in part on other grounds by* Blue v. Dep't of Army, 914 F.2d 525 (4th Cir. 1990).   Rule 16(f) also authorizes the imposition of sanctions for a party's failure to obey a pretrial order, including those sanctions listed in Rule 37(b)(2)(A)(ii)-(vii).   These include:

(ii) prohibiting the disobedient party from supporting or opposing designated

13

claims or defenses, or from introducing designated matters in evidence;

(iii) striking pleadings in whole or in part;

(iv) staying further proceedings until the order is obeyed;

(v) dismissing the action or proceeding in whole or in part;

(vi) rendering a default judgment against the disobedient party; or

(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

The primary purpose for Rule 16(f) sanctions is to encourage "the expeditious and sound management of the preparation of cases for trial." In re Baker, 744 F.2d 1438, 1440 (10th Cir. 1984) (en banc); Harris, 679 F. Supp. at 1389-90 (observing that the purpose of Rule 16 sanctions is to encourage forceful judicial management); *see also* Gregory P. Joseph, *Sanctions: The Federal Law of Litigation Abuse* § 36(A) (4th ed. 2008) (discussing purpose of Rule 16(f) sanctions). Because the primary purpose of Rule 16 sanctions is to assist the court by ensuring reasonable management requirements for case preparation, "[i]mproper motive, bad faith, even reckless behavior, is not a prerequisite for finding a violation of the rule." Harris, 679 F. Supp. at 1389; *accord* Joseph, *supra* (noting that the imposition of monetary sanctions does not require a showing of prejudice). The imposition of monetary sanctions under Rule 16(f) is discretionary, and the "least severe sanction adequate to serve the purpose should be utilized." Harris, 679 F. Supp. at 1390.

In the Eastern District of North Carolina, Local Civil Rule 16.1(d)(4) provides that "[c]ounsel for all parties shall be responsible for preparing the final pretrial order and

presenting it to the court properly signed by all counsel at a time designated by the court."

Failure to provide a pretrial order "may result in sanctions being imposed against all parties

to the action." *Id.* Moreover, "[c]ounsel shall be fully prepared to present to the court all

information and documentation necessary for completion of the pretrial order. Failure to

do so shall result in the sanctions provided by this local rule." Local Civil Rule

16.1(d)(2). Finally, "[f]ailure to comply with the provisions of Local Civil Rule

16.1(d)(2) may result in the imposition of a monetary fine not to exceed $250.00 against

the offending counsel and may result in any other sanction allowable by the Federal Rules

of Civil Procedure against the parties or their counsel." Local Civil Rule 16.1(d)(3).

### B. **Authority of Magistrate Judge to Impose Sanctions**

Jurisdiction and power of magistrate judges are governed by the Magistrates Act,

codified at 28 U.S.C. § 636. *See* Wertz v. Grubbs, No. 93-2355, 1995 U.S. App. LEXIS

96, at *11-12 (4th Cir. Jan. 5, 1995) (unpublished). Section 636(b)(1)(A) gives magistrate

judges the authority to "hear and determine any pretrial matter pending before the court,"

with the exception of motions for injunctive relief, for judgment on the pleadings, for

summary judgment, to dismiss or quash an indictment or information made by the

defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a

class action, to dismiss for failure to state a claim upon which relief can be granted, and to

involuntarily dismiss an action. 28 U.S.C. § 636(b)(1)(A). Subsection (A) further states

that a district court judge "may reconsider any pretrial matter [decided by a magistrate

judge under this subsection] where it has been shown that the magistrate judge's order is

clearly erroneous or contrary to law." *Id.*

Section 636(b)(1)(B) provides that in regard to the eight motions expressly excepted under § 636(b)(1)(A), a magistrate judge may conduct hearings and submit to the district court judge proposed findings of fact and a recommendation for disposition. *Id.* at § 636(b)(1)(B). Upon a party's objection, § 636(b)(1)(B) requires that the district court conduct a *de novo* review of those portions of the proposed findings and recommendation to which objection is made. *Id.* Thus, § 636(b)(1) distinguishes between dispositive and nondispositive motions by requiring a higher standard of review for those listed pre-trial motions considered to be dispositive. *See id.*

This distinction is constitutionally significant. The United States Constitution requires that Article III judges exercise final decision-making authority, and therefore, a district court judge must make the final determination on dispositive matters. *See* Ocelot Oil Corp. v. Sparrow Indus., 847 F.2d 1458, 1463 (10th Cir. 1988) (citing United States v. Raddatz, 447 U.S. 667, 683 (1980)). After the Magistrates Act was amended to include § 636(b)(1), courts recognized the constitutional concern underlying its provisions and, as a result, did not confine the application of § 636(b)(1)(B) to the eight listed motions. *See* 12 Charles Allen Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 3068.2 (2d ed. 1997). Rather, courts considered whether the nature of a motion was dispositive, regardless of whether the motion actually appeared on the list. *See, e.g.*, Long v. Lockheed Missiles and Space Co., 783 F. Supp. 249, 250 (D.S.C. 1992); Neal v. Miller, 542 F. Supp. 79, 81 (S.D. Ill. 1982). If a motion was determined to be

dispositive in nature, a magistrate judge could not exercise decision-making power, but could only issue findings and a recommendation as provided by § 636(b)(1)(B). *See id.* The district court would accordingly conduct a *de novo* review of those findings upon a party's objection. *See id.*

Federal Rule of Civil Procedure 72 was passed to implement 28 U.S.C. § 636(b)(1). *See* Wright & Miller, *supra*, § 3068. The drafters of the rule were aware that courts applying § 636(b)(1)(B) generally considered the nature of pending motions to determine whether they were dispositive rather than merely adhering to the given list. *See id.* at § 3068.2. As a result, Rule 72 sets forth no list of "dispositive" motions, but instead is based upon the dispositive/nondispositive distinction long followed by the courts. *See* Fed. R. Civ. P. 72. Rule 72(a) provides that a magistrate judge may enter an order on a nondispositive matter and if a party objects to the order, a district court judge must review it for clear error. *Id.* Rule 72(b) provides that for dispositive motions, a magistrate judge may only submit proposed findings and a recommendation to the district court judge and, upon a party's objection, the district court judge must conduct a *de novo* review of those portions of the findings and recommendation to which objection is made. *Id.* By requiring courts to consider the nature of a motion instead of providing a list of dispositive motions, Rule 72 "permits the courts to reach commonsense decisions rather than becoming mired in a game of labels." Wright & Miller, *supra*, § 3068.2.

Thus, in accordance with 28 U.S.C. § 636(b)(1)(A) and Fed. R. Civ. P. 72, nondispositive pretrial matters may be referred to a magistrate judge for hearing and

determination. <u>Wertz</u>, 1995 U.S. App. LEXIS 96, at *12 (citing 28 U.S.C. § 636(b)(1)(A)). Nondispositive issues generally include the imposition of sanctions, unless the sanction itself is dispositive of the claim or defense. <u>Powell v. Town of Sharpsburg</u>, No. 4:06-CV-117-F, 2009 U.S. Dist. LEXIS 25356, at *18-19 (E.D.N.C. Mar. 27, 2009); <u>Bowers v. Univ. of Va.</u>, 2008 U.S. Dist. LEXIS 44604, at *12 (W.D. Va. June 6, 2008) (citing <u>Thomas E. Hoar, Inc. v. Sara Lee Corp.</u>, 900 F.2d 522, 525-26 (2d Cir. 1990)); *see also* 14 *Moore's Federal Practice* § 72.11[1][b] (3d ed. 2004) ("The imposition of sanctions is reviewable under the clearly erroneous standard unless the sanction itself can be considered dispositive of a claim.").

Courts throughout the Fourth Circuit routinely affirm the imposition of sanctions as a nondispositive matter well within the authority and jurisdiction of the issuing magistrate judge. *See, e.g.,* <u>In re McAllister Towing of Virginia, Inc. v. United States</u>, No. 2:10CV595, 2012 U.S. Dist. LEXIS 91694, at *2-4 (E.D. Va. July 2, 2012) (rejecting the government's argument that the magistrate judge lacked authority to impose $24,362.53 in sanctions against the United States for discovery violations); <u>Manship v. Bros.</u>, No. 1:11CV1003, 2012 U.S. Dist. LEXIS 19854, at *5-6 (E.D. Va. Feb. 16, 2012) (magistrate judge's imposition of $500 sanction under Rule 11 was nondispositive and could only be reviewed for clear error); <u>Smith v. Homecomings Fin.</u>, No. 1:10CV52, 2010 U.S. Dist. LEXIS 128084, at *6-9 (W.D.N.C. Nov. 22, 2010) (magistrate judge's imposition of monetary sanction of $2,613.81 under Rule 37 a nondispositive matter covered by Rule 72); <u>Collins v. TIAA-CREF</u>, No. 3:06-CV-304-RJC, 2009 U.S. Dist. LEXIS, at *3

18

(W.D.N.C. Apr. 8, 2009) (affirming order of magistrate judge imposing monetary sanctions of $750.00 under Rule 37 and noting that "[t]he award of monetary sanctions against a party for discovery violations is a non-dispositive matter"); Bowers v. University of Virginia, No. 3:06CV41, 2008 U.S. Dist. LEXIS 44604, at *9-16 (W.D.Va. June 6, 2008) (rejecting the plaintiff's argument that the magistrate judge lacked jurisdiction to impose sanctions under Rule 56(g)); Berman v. Cong. Towers Ltd. P'ship-Section I, 325 F. Supp. 2d 590, 595 (D. Md. 2004) (imposition of sanctions under Rule 37 within the magistrate judge's discretion); Segal v. L.C. Hohne Contrs., Inc., 303 F. Supp. 2d 790, 795 (S.D.W. Va. 2004) (Rule 37 sanctions not dispositive); Joseph Giganti Veritas Media Group, Inc. v. Gen-X Strategies, Inc., 222 F.R.D. 299, 304-05 (E.D. Va. 2004) (adopting view of the "better reasoned cases" and concluding that the magistrate judge's imposition of monetary sanctions of $37,393.57 against the plaintiffs and the plaintiffs' counsel under Rule 11 was non-dispositive and thus reviewable under the clearly erroneous and contrary to law standard); Proffitt v. Veneman, No. 5:01CV67, 2002 U.S. Dist. LEXIS 13892, at *2-9 (W.D. Va. July 15, 2002) (Rule 37 sanction barring rebuttal expert not dispositive).

This view is confirmed by the majority of the circuits. *See, e.g.*, Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 5 (1st Cir. 1999) (motions for monetary sanctions under Rule 37 for discovery violations are nondispositive); Thomas E. Hoar, Inc. v. Sara Lee Corp., 900 F.2d 522 (2nd Cir. 1990) (motions for monetary sanctions under Rule 37 for discovery violations are nondispositive); Merritt v. International Brotherhood of Boilermakers, 649 F.2d 1013, 1016-17 (5th Cir. 1981); Bess v. Cate, 422 Fed. App'x 569,

572 (9th Cir. 2011) (a pretrial request for monetary sanctions, whether under Rule 11 or Rule 37, is nondispositive); Hutchinson v. Pfeil, 105 F.3d 562, 566 (10th Cir. 1997). Indeed, of all the circuits to address the issue, only the Seventh Circuit considers the imposition of monetary sanctions under Rule 37 a dispositive matter outside the magistrate judge's discretion. *See* Retired Chicago Police Ass'n v. City of Chicago, 76 F.3d 856 (7th Cir. 1996); *see also* Cleversafe, Inc. v. Amplidata, Inc., 287 F.R.D. 424 (N.D. Ill. 2012) (magistrate order setting forth circuit-by-circuit analysis).

The United States Court of Appeals for the Fourth Circuit has not addressed the issue of whether Rule 11 or Rule 56(g) sanctions are dispositive or nondispositive, but has held in an unpublished opinion that Rule 37 sanctions—specifically a request for attorneys' fees pursuant to Rule 37—are nondispositive and may be reviewed only for clear error. Kebe ex rel. K.J. v. Brown, 91 Fed. App'x 823, 827 (4th Cir. 2004) ("The magistrate judge's order disposing of [the plaintiff's] Rule 37 motion for sanctions is undoubtedly a nondispositive matter covered by Rule 72."). Here in the Eastern District of North Carolina, Judge Fox has recognized that "[p]retrial discovery motions are generally nondispositive in nature." Powell, 2009 U.S. Dist. LEXIS 25356, at *18. If a magistrate judge imposes nondispositive discovery sanctions, review of those sanctions is governed by Rule 72(a). *Id.* at *18-19. In the *Powell* case, Judge Fox concluded that the magistrate judge's sanction of an adverse inference jury instruction was not dispositive of any claim and thus could only be modified or set aside if it was clearly erroneous or contrary to law. *Id.* at *19-20.

20

### III.    ANALYSIS

### A.  The Undersigned Magistrate Judge May Impose Sanctions

The United States Department of Justice, on behalf of government attorney Schwei, argues that the undersigned magistrate judge possesses no legal authority to impose sanctions on counsel for his failure to file a pretrial conference order in the *Rouseco* action. The government contends that such sanctions would constitute a criminal contempt sanction outside the authority of a magistrate judge.   Further, the government asserts that because Judge Fox has remanded the *Rouseco* action to the administrative agency, the instant proceedings can no longer be considered a pretrial matter properly before the undersigned.   The government also argues that an award of sanctions is a dispositive matter reserved for decision by the district court, and that magistrate judges lack inherent authority to impose such sanctions.   Finally, the government contends that Local Civil Rule 16.1 does not authorize sanctions under the circumstances presented here.   These arguments are unpersuasive.

First, contrary to the government's argument, the sanctions contemplated in the pretrial order do not constitute criminal contempt.   The Fourth Circuit has described the difference between civil and criminal contempt thusly:

> "When the nature of the relief and the purpose for which the contempt sanction is imposed is remedial and intended to coerce the contemnor into compliance with court orders or to compensate the complainant for losses sustained, the contempt is civil; if, on the other hand, the relief seeks to vindicate the authority of the court by punishing the contemnor and deterring future litigants' misconduct, the contempt is criminal."

Cromer v. Kraft Foods N. Am., Inc., 390 F. 3d 812, 821-22 (4th Cir. 2004) (quoting

Buffington v. Baltimore County, 913 F.2d 113, 120-21 (4th Cir. 1990)).

Here, the notice of potential sanctions set forth in the pretrial order was expressly conditioned upon and intended to coerce the parties' compliance with the pretrial order. *See* Cromer, 390 F.3d at 822 (sanctions conditioned on compliance with a court order are civil). The pretrial order warned the parties that "[f]ailure to submit a joint proposed pre-trial order by Tuesday, March 12, 2013, will result in the cancellation of the pre-trial conference" and that "[i]f the pre-trial conference is canceled for this reason, the undersigned may require the parties to show cause why they should not be sanctioned." Thus, the contemplated imposition of sanctions was conditioned upon the parties' compliance with the pretrial order. As such, the sanction is civil in nature, rather than criminal. *Cf.* Hicks v. Feiock, 485 U.S. 624, 632 (1988) (explaining that "a fine that would be payable to the court is also remedial when the defendant can avoid paying the fine simply by performing the affirmative act required by the court's order").

In any event, the distinction is academic here, as the undersigned need not resort to contempt authority to impose the sanctions available under Rules 16(f) and Rule 37(b).[3]

---

3. In so doing, the undersigned is mindful of cases in which courts have imposed substantial fines pursuant to Rule 37 primarily intended to punish the parties rather than induce compliance with court orders. *See, e.g.,* Bradley v. Am. Household, Inc., 378 F.3d 373 (4th Cir. 2004) (appeal from district court order imposing $200,000 in fines for discovery violations); Buffington, 913 F.2d at 132-33 (appeal from district court's order imposing fine of $6,785.37). In such cases, the Fourth Circuit has observed that "a Rule 37 fine is effectively a criminal contempt sanction, requiring notice and the opportunity to be heard." Hathcock v. Navistar Int'l Transp. Corp., 53 F.3d 36, 42 (4th Cir. 1995) (imposition of $5,000 fine with no notice or opportunity to be heard effectively a criminal contempt sanction). However, as previously explained, the sanctions contemplated by the pretrial order here are intended to coerce compliance, not to punish or vindicate the authority of the court. Any punitive effect such sanctions may have is incidental

22

Contempt is but one of the sanctions available under Rule 16, and the court need not find contempt to impose monetary sanctions. *See, e.g.*, <u>Baker</u>, 744 F.2d at 1441 (affirming monetary sanctions imposed on attorneys under Rule 16 and stating that "[w]e are not dealing here with the historic concept of contempt"); Joseph, *supra*, at § 37(b)(1) (noting that contempt is only one of the range of sanctions available under Rule 16(f)). Magistrate judges in the Fourth Circuit routinely sanction parties pursuant to Rule 16 and Rule 37, under the authority delegated to them to handle pretrial matters. *See, e.g.*, <u>Virginia Brands, LLC v. Kingston Tobacco Co.</u>, No. 4:10CV00009, 2013 U.S. Dist. LEXIS 42417, at *10-13 (W.D. Va. Mar. 26, 2013) (declining to exercise contempt authority and construing motion for sanctions as a nondispositive motion under Rule 37); <u>RDLG, LLC v. RPM Group Brokerage, LLC</u>, No. 1:10CV204, 2012 U.S. Dist. LEXIS 144388, at *14-17 (W.D.N.C. Oct. 4, 2012) (magistrate order imposing sanctions of $2,500 and $5,000 upon attorneys under Rule 16); <u>Smith</u>, 2010 U.S. Dist. LEXIS 128084, at *6-9 (affirming magistrate judge's imposition of monetary sanction of $2,613.81 under Rule 37); <u>Burch v. Blue Cross Blue Shield</u>, No. 1:08CV364, 2009 U.S. Dist. LEXIS 116371, at *11-12 (M.D.N.C. Dec. 14, 2009) (magistrate order imposing sanctions of $1,707.50 against attorney under Rule 16); <u>Martin v. Eastern Steel Constructors</u>, No. 2:05-CV-397, 2007

---

and does not transform the nature of the proceeding into one of criminal contempt. *See* <u>Buffington</u>, 913 at 134 ("The fact that this punitive fine had the incidental effect of compensating for the costs of prosecuting the violation is neither surprising nor determinative of its character") (citing <u>Gompers v. Bucks Stove & Range Co.</u>, 221 U.S. 418, 443 (1911) ("It is true that either form of [sanction] has also an incidental effect" that can be viewed as promoting the purpose of the alternate form of sanction)).

U.S. Dist. LEXIS 24131, at *15 (S.D.W.Va. Mar. 29, 2007) (granting motion for sanctions under Rule 37 in the amount of $2,300); Gardendance, Inc. v. Woodstock Copperworks, Ltd., 230 F.R.D. 438, 2005 U.S. Dist. LEXIS 37297, at *30-31 (M.D.N.C. 2005) (affirming magistrate judge's award of $8,909.79 in sanctions under Rule 37 and noting that it "was within the Magistrate Judge's authority and discretion to award sanctions as he saw fit to ensure future compliance with discovery orders and to compensate [the defendant] for the extra time and expense"); *accord* Bibbs v. New River Cmty. & Tech. College, No. 5:11-0519, 2012 U.S. Dist. LEXIS 172978, at *10 (S.D. W. Va. Dec. 6, 2012) (magistrate order denying "nondispositive" motion for sanctions under Rules 16 and 37); Victor Stanley, Inc. v. Creative Pipe, Inc., 269 F.R.D. 497, 519 (D. Md. 2010) ("it is clear that I have authority pursuant to Rule 37(b)(2)(A) to impose sanctions for the violation of my four orders to produce discovery"); McMillan v. Carey, No. 7:09-CV-208-F, 2010 U.S. Dist. LEXIS 134636, at *3-4 (E.D.N.C. Dec. 21, 2010) (denying motion for sanctions but warning the plaintiff that her failure to comply with discovery obligations could result in sanctions pursuant to Rule 16(f) and Rule 37).   Similarly, magistrate judges in the Fourth Circuit have also imposed monetary sanctions under Rule 11.   *See, e.g.,* Givens v. Criswell, No. 5:08CV25, 2010 U.S. Dist. LEXIS 63451, at *23-24 (N.D. W. Va. June 24, 2010) (imposing sanctions of $1,000 under Rule 11); Obifuele v. 1300, LLC, No. SKG-04-3839, 2006 U.S. Dist. LEXIS 60043, at *32 (D. Md. Aug. 23, 2006) (awarding $22,600.75 in sanctions under 28 U.S.C. § 1927 and Rule 11, and the court's inherent authority); Moss v. Mackey, No. 1:07CV135, 2009 U.S. Dist. LEXIS 14177, at *27-28

(W.D.N.C. Feb. 10, 2009) (sanctioning parties with attorneys' fees and requiring lead counsel to attend continuing legal education on the subject of civil rights litigation under the inherent authority of the court). Thus it is clear that the undersigned has authority to impose sanctions in accordance with Rule 16 and Rule 37.

The government's assertion that an award of sanctions constitutes a dispositive matter outside the jurisdiction of a magistrate judge may be swiftly rejected. As explained *supra*, insofar as the sanctions chosen by the magistrate judge do not conclusively resolve a claim, the imposition of sanctions in this circuit is a nondispositive matter that may be reviewed only for clear error. Powell, 2009 U.S. Dist. LEXIS 25256, at *18-19.

The government further argues that remand of the *Rouseco* action to the administrative agency divests the undersigned of jurisdiction, because the hearing to show cause can no longer be considered a "pretrial" matter. However, the hearing to show cause directly stems from misconduct in relation to a pretrial matter before the undersigned. As such, the undersigned retains jurisdiction to impose sanctions, regardless of whether judgment has been entered in the case. *See, e.g.,* Myers v. Sessoms & Rogers, P.A., 781 F. Supp. 2d 264, 267 (E.D.N.C. 2011) ("Notwithstanding the voluntary dismissal, this court retains jurisdiction over the motion for sanctions"); Bowers, 2008 U.S. Dist. LEXIS 44604, at *9-16 (magistrate judge held hearing on sanctions after summary judgment was granted); Joseph Giganti Veritas Media Group, Inc., 222 F.R.D. at 307-08 (hearing on sanctions held after conclusion of the case); *see also* Wright & Miller, § 3068.1 (noting that the "sensible interpretation of the limitation to 'pretrial' in section 636(b)(1) is

to focus on whether the magistrate judge's orders relate to matters raised before trial in the case in question"). Accordingly, Judge Fox's remand of the *Rouseco* action to the administrative agency does not divest the undersigned of authority to impose sanctions arising from pretrial conduct.

Finally, the government asserts that the sanctions available under Local Civil Rule 16.1 do not apply to the failure of counsel to file a joint pretrial order, only to the parties' conduct at the pretrial conference. However, Local Civil Rule 16.1(d)(4) plainly states that

> [c]ounsel for all parties shall be responsible for preparing the final pretrial order and presenting it to the court properly signed by all counsel at a time designated by the court. Upon approval by the court, the original shall be filed with the clerk. Failure to provide a unified pretrial order may result in sanctions being imposed against all parties to the action.

The pretrial order "must be submitted to the court seven (7) days prior to the pretrial conference." Local Civil Rule 16.1(b)(1). In addition, Local Civil Rule 16.1(d)(2) provides that "[c]ounsel shall be fully prepared to present to the court all information and documentation necessary for completion of the pretrial order. Failure to do so shall result in the sanctions provided by this local rule." Finally, subsection (d)(3) states that

> [f]ailure to comply with the provisions of Local Civil Rule 16.1(d)(2) may result in the imposition of a monetary fine not to exceed $250.00 against the offending counsel and may result in any other sanction allowable by the Federal Rules of Civil Procedure against the parties or their counsel.

Consistent with Local Civil Rule 16.1, the pretrial conference order in the *Rouseco* action instructed the parties to submit their joint pretrial order on Tuesday, March 12, 2013,

26

seven days before the pretrial conference scheduled for Tuesday, March 19, 2013. The parties failed to do so, in violation of the pretrial conference order and Local Rule 16.1(b)(1) and (d)(4). Moreover, counsel to the parties were unquestionably not "prepared to present to the court all information and documentation necessary for completion of the pretrial order," in violation of Local Rule 16.1(d)(2). Accordingly, under Local Rule 16.1, "a monetary fine not to exceed $250.00 against the offending counsel" may be imposed, as well as "any other sanction allowable by the Federal Rules of Civil Procedure against the parties or their counsel." Local Civil Rule 16.1(d)(3).

### B. **The Attorneys' Conduct Here is Sanctionable**

Having duly considered the affidavits submitted and the arguments by counsel, the undersigned finds that the conduct by attorneys Schwei and Babel in this case is sanctionable. Local Civil Rule 16.1(b)(1) requires submission of the parties' joint pretrial order "seven (7) days prior to the pretrial conference." The undersigned's pretrial conference order clearly and emphatically informed counsel that the joint pretrial order "**must <u>arrive</u> in chambers and be filed no later than Tuesday, March 12, 2013**." *Rouseco* Order, February 14, 2013, DE-72. The pretrial conference order explicitly warned that the failure to submit the joint pretrial order by March 12, 2013 would result in cancellation of the pretrial conference and the possible imposition of sanctions.

Both attorneys Schwei and Babel concede that they were aware of the parties' responsibility to submit the pretrial order by the March 12th deadline. Schwei Decl. ¶ 13 ("I recognized and was aware of the March 12, 2013 deadline for submission of the

proposed pre-trial order"); Babel Aff. ¶ 6 ("The Court's Order required the parties to submit a Pretrial Order on or before March 12, 2013"). Yet neither attorney took steps to fulfill the parties' responsibility. Babel Aff. ¶ 11 ("As of Monday, March 11, 2013, I had not been contacted by counsel for Plaintiff to confer as to a Pretrial Order and I had not been provided with any draft Pretrial Order as required by Local Rule 16.1(b)(2)."); Schwei Decl. ¶ 21 ("I had multiple conversations and e-mail exchanges with opposing counsel in the days both before and after the conference with Judge Fox, and at no point did opposing counsel suggest to me that it was necessary for the parties to file a proposed pre-trial order with the Court by March 12, 2013, or that the filing of the motion to stay was insufficient to comply with Judge Webb's order regarding the pre-trial conference.").

The government argues that the motion to stay filed by Mr. Schwei constituted a "motion demonstrating good cause" for extension of the joint pretrial order deadline as set forth in the undersigned's pretrial conference order. However, the motion to stay remained pending before Judge Fox at the time of the March 12, 2013 deadline. Judge Fox did not rule upon the motion to stay until March 18, 2013. The motion to stay was not referred to the undersigned, and the undersigned never entered an order extending the joint pretrial order deadline. In fact, because the motion to stay was opposed, it was arguably not even ripe for adjudication until March 27th, well after the March 12th deadline. *See* Local Civil Rule 7.1(e)(1) (allowing party twenty-one days to respond to motion). Mr. Schwei's unilateral assessment and belief that his motion to stay "demonstrate[ed] good cause" justifying extension of the joint pretrial order deadline, absent a ruling by the Court,

was patently unreasonable. Counsel may not file motions and then simply ignore deadlines in optimistic anticipation of an eventual favorable ruling from the Court. Notably, the pretrial conference order warns that "**[t]he fact that the parties have reached a settlement agreement does not constitute good cause for an extension unless a notice of dismissal or other similar document has been filed with the Clerk of Court.**" *Rouseco* Order, February 14, 2013, DE-72. Thus, the pretrial conference order sets a high bar for the "good cause" standard for extension of the joint pretrial order deadline, a bar that the motion to stay in this case certainly failed to meet.

Belying his assertion that the filing of the motion to stay "fulfilled [his] obligation . . . regarding the submission of the proposed pre-trial order," Mr. Schwei notes that "because Judge Fox had not acted to grant the stay motion, and given the impending deadline regarding the parties' pre-trial order, [he] determined to call Judge Fox's chambers for guidance on Monday, March 11, 2013 if he had not ruled by the close of business that day." Schwei Decl. ¶ 17. However, Mr. Schwei never called Judge Fox's chambers for guidance.[4] He relied instead on an e-mail he received on the afternoon of March 11th from Judge Fox's courtroom deputy requesting that counsel schedule a telephonic conference with Judge Fox, who had a "few questions" about the case. Schwei Decl. ¶ 18. Nothing in this e-mail communicated any information about the pretrial conference or the parties' responsibility to submit a proposed joint pretrial order by March 12, 2013. Clearly, the e-mail did not extend the deadline for submission of the pretrial

---

4. Given the clear directive of the February 14th pretrial conference order, it is puzzling what guidance Mr. Schwei needed or expected to receive from an *ex parte* communication to Judge Fox's chambers.

order.  Incredibly, Mr. Schwei avers that because of the e-mail, he "believed it was neither necessary nor advisable . . . to file a pre-trial order with the Court" because "[d]oing so might have been contrary to Judge Fox's views about how [the] case should proceed[.]" Schwei Decl. ¶ 19.  But during the telephonic conference with Judge Fox on March 13, 2013, Mr. Schwei notes that "[n]othing was raised or discussed . . . regarding the pending stay motion or the parties' proposed pre-trial order." *Id.* at ¶ 20.  Mr. Babel likewise indicates that he "could have filed a Pretrial Order . . . but didn't believe it was necessary based on Plaintiff's Motion to Stay Trial Pending Resolution of Summary Judgment, the email from [the courtroom deputy], and the instructions of Judge Fox during our March 13, 2013 conference."  Babel Aff. ¶ 15.  Thus, according to attorneys Schwei and Babel, they failed to submit a joint pretrial order on March 12th because of (1) a pending, opposed motion to stay that was not yet ripe; (2) an e-mail from Judge Fox's courtroom deputy that contained no information whatsoever regarding the pretrial order; and (3) a telephonic conference with Judge Fox that took place the day after the pretrial order was due, during which no one discussed the pretrial order.  Mr. Schwei and Mr. Babel appear to believe that because the Court had not ruled upon the motion to stay, and because no one at the Court contacted them in the days leading up to the March 12th deadline to remind them of their duty to submit the pretrial order, this silence on the Court's part somehow absolved them of their obligations to comply with the pretrial conference order.  This logic is startling and frankly, unfathomable.  As Judge Fox concluded, "[n]o subsequent order relieved the parties of [their] obligation [to submit the joint pretrial order], and no action of

the court indicated that the parties should not have been prepared to proceed to trial as scheduled." Order Denying Appeal, March 21, 2013, DE-7. The Court does not have the obligation or resources to act as nursemaid to attorneys to ensure their compliance with plainly-worded orders. That is what sanctions are for.

### C. Sanctions are Imposed Against Attorney Schwei

Having determined that neither Mr. Schwei nor Mr. Babel has offered a reasonable explanation for their failure to timely submit a pretrial order on March 12, 2013 as required under Rule 16 of the Federal Rules of Civil Procedure, Local Civil Rule 16.1(b)(1), and the undersigned's February 14, 2013 pretrial conference order, and that sanctions may be imposed, the undersigned considers whether to impose sanctions against either Mr. Schwei or Mr. Babel. Considering and weighing each attorney's relative role and responsibility with respect to the pretrial order, as well as the explanations for their conduct and demeanor at the hearing to show cause, the undersigned chooses to impose sanctions against Mr. Schwei. The undersigned declines to impose sanctions against Mr. Babel.

The undersigned declines to impose sanctions against attorney Babel for several reasons. First, although both parties were responsible for filing the pretrial order, *see* Local Civil Rule 16.1(d)(4), the greater responsibility lay with Mr. Schwei as counsel for the plaintiff. *See* Local Civil Rule 16.1(b)(2) ("It shall be the duty of counsel for the plaintiff to arrange for the parties to confer and prepare a final pretrial order."). Further, the initial scheduling of the hearing to show cause during the week of March 28th caused Mr. Babel to miss a long-planned family vacation intended to celebrate his parents' fiftieth

31

wedding anniversary. As such, Mr. Babel has already, in effect, been sanctioned for his conduct. Finally, in his affidavit and during his allocution, Mr. Babel showed the contrition a judge would expect from an attorney who had failed to comply with that judge's order. More importantly, he made a cogent explanation of his conduct, rather than a defense; he recognized that the failure of the parties to file a pretrial order is indefensible. Taken as a whole, Mr. Babel's contrition and acceptance of responsibility convince the undersigned that the mistakes he made in the *Rouseco* action are unlikely to be repeated, requiring no further remonstrance from this Court. Accordingly, no sanction will be imposed on attorney Babel.

Attorney Schwei presents an entirely different case. As previously noted, Mr. Schwei had the greater responsibility for ensuring that the pretrial order was filed. Yet there appears to be little recognition on Mr. Schwei's part of his basic failure to fulfill this obligation. Instead, in his declaration and brief, Mr. Schwei defends his conduct, asserting that he "acted reasonably." Schwei Decl. ¶ 33. However, the undersigned has determined that Mr. Schwei's explanation of his conduct was patently unreasonable. Unlike attorney Babel, Mr. Schwei has not accepted responsibility and has offered only a conditional apology: conceding that his "actions could be construed as a failure to comply," Mr. Schwei apologized for such "impression." *Id.* His address to the Court at the hearing appeared merely perfunctory. Given attorney Schwei's lack of insight, even in retrospect, regarding his actions in this case, the undersigned concludes that sanctions are appropriate, and indeed, essential to ensure future compliance with the Court's orders:

32

"[t]he court must have the ability to control its own docket and to have its orders obeyed." Order Denying Appeal, March 21, 2013, DE-7; *see also* <u>Harris</u>, 679 F. Supp. at 577 (stating that, "[s]anctions in an appropriate case deter both the individual attorney (and party) and other members of the bar (or public) from taking the same frivolous or reckless course of action").

### D. <u>Sanctions Imposed</u>

Having determined that sanctions are appropriate against attorney Schwei, the undersigned now considers what sanctions should be imposed. Local Civil Rule 16.1(d)(3) provides that "[f]ailure to comply with the provisions of Local Civil Rule 16.1(d)(2) may result in the imposition of a monetary fine not to exceed $250.00 against the offending counsel." While this amount does not restrict the undersigned's ability to impose any "just order" of sanctions under Rule 16 of the Federal Rules of Civil Procedure, it is nevertheless instructive as to this Court's belief that a monetary sanction of $250.00 or less is generally sufficient to coerce compliance with Local Rule 16.1. The undersigned therefore concludes that a sanction in the amount of $200.00 represents "the least severe sanction adequate to serve the purpose" of ensuring future compliance by attorney Schwei. <u>Harris</u>, 679 F. Supp. at 1390. Accordingly, the undersigned imposes sanctions in the amount of $200.00.

### IV. <u>CONCLUSION</u>

In accordance with Rule 16 of the Federal Rules of Civil Procedure, attorney Daniel S. Schwei is hereby SANCTIONED. Attorney Daniel S. Schwei is DIRECTED to pay

$200.00 to the Clerk of Court.   Such sanctions should be paid within five (5) days of entry of this order.

DONE AND ORDERED in Chambers at Raleigh, North Carolina on Thursday, May 16, 2013.

_____
WILLIAM A. WEBB
UNITED STATES MAGISTRATE JUDGE