UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:13-MC-2

| | | |
|---|---|---|
| IN RE: Daniel S. Schwei, Seth Morgan Wood, Jeremy M. Wilson, and Thomas S. Babel. | ) ) ) | ORDER |

This matter is before the court on the Appeal by Daniel Schwei of the May 17, 2013, Order Imposing Sanctions [DE-25].

## I. FACTUAL AND PROCEDURAL BACKGROUND

On March 1, 2011, the United States of America filed an enforcement action under the Fair and Equitable Tobacco Reform Act ("FETRA"), 7 U.S.C. § 518 *et seq.*, on behalf of the United States Department of Agriculture ("USDA") in *United States v. Rouseco*, No. 4:11-CV-35-F. The United States was represented in the *Rouseco* action by Daniel Schwei, a Trial Attorney in the Federal Programs Branch of the Civil Division. Schwei Decl. [DE-14-1] ¶¶ 1-2.

On February 27, 2012, the United States filed its Motion for Summary Judgment in the *Rouseco* action, arguing *inter alia*, that the administrative record established that the USDA imposed certain assessments and penalties on the defendant Rouseco, Inc., that Rouseco failed to pay such assessments and penalties, and also failed to file any administrative appeal contesting the assessments and penalties. The United States contended it was therefore entitled to judgment as a matter of law, based solely on the administrative record. *See Rouseco* docket, Motion for Summary Judgment [DE-22]. Rouseco filed a Response in opposition to the Motion for Summary Judgment on March 26, 2012, and the parties thereafter moved to continue the trial date and accompanying pretrial deadlines on eleven different occasions. Finally, on February 4, 2013, the United States filed its Reply in support of the Motion for Summary Judgment. Rouseco successfully sought leave to

file a sur-reply on or before February 19, 2013.

On February 14, 2013, United States Magistrate Judge William A. Webb issued an Order setting the pre-trial conference in *Rouseco* action for Tuesday, March 19, 2013. The February 14, 2013, Order also provided:

> **Prior to the pre-trial conference, the parties shall submit the joint pre-trial order in accordance with Local Civil Rule 16.1(d). The joint pre-trial order shall be filed using the Court's electronic case filing system, CM/ECF, and sent directly to the undersigned at "documents-USMJ_Webb@nced.uscourts.gov." The proposed order must <u>arrive</u> in chambers and be filed no later than Tuesday, March 12, 2013. This deadline will not be extended absent the filing of a motion demonstrating good cause for the extension. The fact that the parties have reached a settlement agreement does not constitute good cause for an extension unless a notice of dismissal or other similar document has been filed with the Clerk of Court. Failure to submit a joint proposed pre-trial order by Tuesday, March 12, 2013, will result in the cancellation of the pre-trial conference. If the pre-trial conference is canceled for this reason, the undersigned may require the parties to show cause why they should not be sanctioned.**

*Rouseco* docket, February 14, 2013, Order [DE-72]. On February 19, 2013, Rouseco filed its sur-reply.

While the Motion for Summary Judgment was pending before the undersigned, Schwei, on behalf of the United States, filed a Motion to Stay Trial Pending Resolution of Summary Judgment on March 6, 2013. Therein, the United States requested that the court stay all pre-trial and trial proceedings until after the court ruled on the Motion for Summary Judgment.

According to Schwei, when there was no ruling on the Motion to Stay by March 11, 2013–the day before the pre-trial order was due–he had determined to call the undersigned's chambers for guidance as to how to proceed if the undersigned did not rule on the motion by the end of the day. Schwei Decl. [DE-14-1] ¶ 17. Schwei did not call the undersigned's chambers, however, because

2

he received an email from a deputy clerk of court on behalf of the undersigned. In the email, addressed to all counsel, the deputy clerk stated: "Judge Fox currently has this matter under review of the various motions that are pending. The judge would like to speak with all of you as he has a few questions about this matter." Schwei Decl. [DE-14-1] ¶ 18; Ex. 1 [DE-14-2]. The deputy clerk then requested a telephone conference on either March 12 on March 13. *Id.* Counsel chose March 13, 2013, the day after the pre-trial order was due, for the teleconference.

Schwei avers that he did not endeavor to file a pre-trial order because (1) he believed the undersigned would discuss how the case should proceed during the March 13 teleconference and (2) he believed filing a pre-trial order would be viewed by the court, and/or Rouseco, as inconsistent with the United States' position that the case should be resolved on the pending Motion for Summary Judgment and not through trial. Schwei Decl. [DE-14-1] ¶ 19.

At the March 13, 2013, teleconference, the undersigned asked several questions, then informed counsel that he would rule on all of the pending motions by Monday, March 18, unless the case had settled by that date. Schwei Decl. [DE-14-1] ¶ 20. There was no discussion at the teleconference about the pending Motion to Stay.

The case did not settle, and accordingly, on March 18, 2013, the undersigned issued an Order denying the Motion for Summary Judgment, remanding the matter to the USDA for further proceedings, and denying the remaining motions as moot. *See Rouseco* docket, March 18, 2013, Order [DE-77]. The Clerk of Court entered judgment that same day.

According to Schwei, he construed the undersigned's denial of the Motion to Stay as moot to mean that the pre-trial conference scheduled before Judge Webb on March 19, 2013, to be cancelled. Schwei learned from opposing counsel during a phone call on March 18, 2013, however,

3

that Judge Webb still intended to go forward with the pre-trial conference. Schwei Decl. [DE-14-1] ¶ 25. After calling Judge Webb's chambers, Schwei learned that Judge Webb intended to hold the pre-trial conference and wanted counsel for the parties to address why they had failed to file a proposed pre-trial order by March 12, 2013. Because Schwei could not travel to Raleigh from Washington, D.C., in time for the 9 a.m. hearing, and because Judge Webb denied his request to appear by telephone, he arranged for an Assistant United States Attorney assigned to the Eastern District of North Carolina to appear at the March 19, 2013, hearing.

The focus of the March 19, 2013, pre-trial conference before Judge Webb was the failure of Schwei and the other counsel in this case to comply with his February 14, 2013, Order and the Local Rules of this court. Judge Webb announced at the start of the conference that he intended "to sanction someone for the Government and for the defendants." *See Rouseco* docket, Transcript of March 19, 2013, Hearing [DE-85] p. 3. After the conference concluded, Judge Webb issued an Order, stating:

> [B]y failing to submit a proposed pretrial order, and by failing to seek an extension of time for filing a pretrial order, counsel for the parties have failed to discharge their obligations under Local Rule 16.1 and are therefore subject to sanctions. Accordingly, . . . counsel for the parties are hereby ORDERED to appear for hearing on Thursday, March 28, 2013, at 9:00 a.m. . . . and SHOW CAUSE WHY they should not be sanctioned.

March 19, 2013, Order [DE-1]. Judge Webb also directed the Clerk of Court to open a miscellaneous case "[f]or the purpose of further adjudication of this matter." *Id.*

In response to the Order to Show Cause, Schwei filed his declaration on March 25, 2013 [DE-13-1] and a legal memorandum on March 26, 2013. In the memorandum, the Department of Justice argued that Schwei's conduct was not sanctionable and that Judge Webb, as a magistrate

4

judge, lacked authority to impose sanctions on Schwei. With regard to Judge Webb's authority to impose sanctions in this miscellaneous case, Schwei argued that (1) the $250 fine referenced in Local Civil Rule 16.1 constitutes a criminal contempt sanction, and Judge Webb was not authorized under 28 U.S.C. § 636 to independently impose such a sanction; (2) the sanctions proceeding could not be considered a pretrial matter within Judge Webb's jurisdiction because all of the acts relevant to the sanctions proceeding occurred post-judgment; (3) the award of sanctions is a dispositive matter and is therefore reserved for decision by the district court under § 636; (4) magistrate judges lack inherent authority to impose sanctions because that authority is only vested in Article III judges, and (4) Local Rule 16.1 did not authorize sanctions under these circumstances. Response to Show Cause Order [DE-14] pp. 10-17. In light of the arguments that he lacked jurisdiction to preside over the show cause hearing, Judge Webb continued the hearing to Thursday, April 11, 2013.[1]

At the start of the April 11, 2013, hearing, Judge Webb stated:

> I would be remiss if I did not comment on the government's response on the

---

[1] Attorney Thomas S. Babel, counsel for Rouseco, previously moved to continue the show cause hearing because he would be out of the country the week of March 25, 2013, with his extended family celebrating his parent's fiftieth wedding anniversary. Judge Webb summarily denied Mr. Babel's motion to continue the hearing in a March 20, 2013, Order [DE-3]. Mr. Babel appealed this decision to the undersigned, but the appeal was denied [DE-7]. In so doing, the undersigned observed:
> On February 14, 2013, Judge Webb entered an order in Case No. 4:11-CV-35-F, which stated that a pretrial order must be submitted in that case no later than March 12, 2013, and that if the parties failed to do so they may be required to show cause why they should not be sanctioned. [Case No. 4:11-CV-35-F, DE-72]. No subsequent order relieve the parties of this obligation, and no action of the court indicated that the parties should not have been prepared to proceed to trial as scheduled.
> The court must have the ability to control its own docket and to have its orders obeyed.

March 21, 2013 Order [DE-7].

5

issue of my authority. My clerks were able to find over 15 cases from district courts throughout the Fourth Circuit, including seven from North Carolina, which either explicitly or implicitly support the proposition of a magistrate judge's authority to sanction parties for pretrial matters.

This includes a 2009 case from Judge Fox called *Powell versus the Town of Sharpsburg*, concluding that a discovery sanction imposed by a magistrate judge was a non-dispositive matter, reviewable only for clear error, and the Court of Appeals of the Fourth Circuit in the unpublished decision of *Kebe . . . versus Brown* has stated that, quote, "A magistrate judge's order disposing of a Rule 37 motion for sanctions is undoubtedly a non-dispositive matter covered by Rule 72."

Transcript April 11, 2013 Hearing [DE-18] p. 4. Judge Webb heard legal arguments from the parties to the proceeding, as well as personal statements from Schwei and Thomas Babel. At the conclusion of the hearing, Judge Webb allowed the parties to file supplemental briefing, if they so chose, within 20 days of their receipt of the transcript of the hearing.

Schwei filed his supplemental briefing [DE-19] on May 8, 2013, again arguing that there was no factual basis for imposing sanctions, and reiterating his belief that Judge Webb lacked authority to impose sanctions under the circumstances. On May 17, 2013, Judge Webb issued an Order, declining to impose fines against some of the attorneys who were party to these proceedings, but finding grounds and imposing sanctions in the amount of $200 against Schwei. May 17, 2013 Order [DE-20] p. 1.

In so doing, Judge Webb reasoned that (1) the sanctions contemplated in his February 14, 2013, Order do not constitute criminal contempt sanctions; (2) any distinction between criminal and civil sanctions is "academic," because he did not need to resort to contempt authority to impose sanctions when he had authority to impose sanctions under Federal Rules of Civil Procedure 16 and 37; (3) the imposition of sanctions is non-dispositive; (4) the undersigned's remand of the *Rouseco* case did not divest Judge Webb of authority to impose sanctions arising from pretrial conduct, and

(5) Local Civil Rule 16.1 explicitly authorized sanctions in this case.

Schwei has now appealed Judge Webb's May 17, 2013 Order, and in his 58-page memorandum, reiterates the arguments he presented to Judge Webb. In addition to reiterating his original arguments, Schwei also asserts that this court must make a *de novo* determination of this matter pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b).

## II. ANALYSIS

### A. Standard of Review

"A magistrate judge's power is derived from 28 U.S.C. § 636, which provides three general types of referrals by a district court." *Reddick v. White*, 456 Fed. Appx. 191, 192 (4th Cir. 2011). The first type of referral is authorized under § 636(b)(1)(A), under which "a judge may have a magistrate decide any 'pretrial' matter except certain specified motions.[2] These exceptions are motions which Congress to considered to be 'dispositive.'" *Aluminum Co. of Am. (ALCOA) v. United States Envtl. Prot. Agency*, 663 F. 2d 499, 501 (4th Cir. 1981) (citing House Report No. 94-1609, P.L. 94-577, reprinted at U.S. Code Cong. & Ad. News 6162 (1976)). "Under this section, a district court reviews a magistrate judge's order to determine if it is 'clearly erroneous or contrary to law.' " *Reddick*, 456 Fed. Appx. at 192 (quoting § 636(b)(1)(A) and citing Fed.R.Civ.P. 72(a)). "A factual finding is clearly erroneous when [a court is] 'left with the definite and firm conviction that a mistake has been committed.' " *TFWS, Inc. v. Franchot,* 572, F.3d 186, 196 (4th Cir. 2009) (quoting *Anderson v. Bessemer City,* 470 U.S. 564 (1985)). The "contrary to law" standard permits

---

[2] These motions include "a motion for injuctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit the maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action." 28 U.S.C. § 636(b)(1)(A).

7

plenary review of legal conclusions. *Stonecrest Partners, LLC v. Bank of Hampton Roads*, 770 F. Supp. 2d 778, 782 (E.D.N.C. 2011).

A district judge may also refer matters to magistrate judges under § 636(b)(1)(B) or § 636(b)(3). The former allows a magistrate judge to conduct hearings and submit to a district judge proposed findings of fact and recommendations for the disposition of the motions excepted in § 636(b)(1)(A). The latter allows a district judge to assign a magistrate judge "such additional duties as are not inconsistent with the Constitution and the laws of the United States." 28 U.S.C. § 636(c). With either of these type of referrals, a district "judge is obligated to review the magistrate's order by giving the parties a 'de novo determination.'" *ALCOA*, 663 F. 2d at 502.

Schwei clearly disputes Magistrate Judge Webb's conclusion that the Sanctions Order constitutes a non-dispositive motion that the undersigned may review for only for clear error or being contrary to law. The court does not find it necessary to wade into the dispositive/non-dispositive dispute, because under either standard of review the May 17, 2013, Order must be vacated. As a matter of law, Judge Webb, under these circumstances, lacked the authority to impose what amounts to a criminal contempt sanction. *See PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 15 (1st Cir. 2010) ("[F]or questions of law, there is no practical difference between review under Rule 72(a)'s 'contrary to law' standard and review under Rule 72(b)'s de novo standard.").

## B. Criminal nature of the sanctions

Judge Webb declared that the distinction between criminal and civil contempt was "academic" because he did not need to resort to contempt authority to impose the sanctions available under Rule 16(f) and Rule 37(b). This statement is incorrect, at least within the Fourth Circuit.

8

To be sure, Rule 16(f)[3] and Rule 37 both authorize the imposition of sanctions, which can include monetary sanctions. Binding Fourth Circuit precedent makes clear, however, that the authority relied upon by a court to impose a fine is not dispositive of the question of whether a monetary sanction constitutes criminal contempt. *See Bradley v. American Household, Inc.*, 378 F. 3d 373 (4th Cir. 2004) ("The district court did not believe that it was conducting criminal contempt proceedings. However, we cannot take the court's characterization of its own proceedings as either civil or criminal to be determinative; we are required to decide that matter for ourselves."). Rather, in determining whether a sanction is criminal or civil in nature, " 'the critical features are the substance of the proceeding and the character of the relief that the proceeding will afford.' "

---

[3] Rule 16(f) provides the following:
(1) *In General*. On motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney:
    (A) fails to appear at a scheduling or other pretrial conference;
    (B) is substantially unprepared to participate–or does not participate in good faith–in the conference; or
    (C) fails to obey a scheduling or other pretrial order.
(2) *Imposing Fees and Costs*. Instead of or in addition to any other sanction, the court must order the party, its attorney, or both to pay the reasonable expenses–including attorney's fees–incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust.
FED. R. CIV. P. 16(f). Rule 37 (b)(2)(A)(ii)-(vii), in turn authorizes the following sanctions:
    (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters into evidence;
    (iii) striking pleadings in whole or in part;
    (iv) staying further proceedings until the order is obeyed;
    (v) dismissing the action or proceeding in whole or in part;
    (vi) rendering a default judgment against the disobedient party; or
    (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.
*Id.*

9

*Buffington v. Baltimore County,* 913 F. 2d 113, 133 (4th Cir. 1990) (quoting *Hicks v. Feiock,* 485 U.S. 624, 631 (1988)). Regarding the "character of relief," the Fourth Circuit has observed that "[t]he basic difference between civil and criminal contempt sanctions is that civil contempt sanctions are intended 'to coerce the contemnor into compliance with court orders or to compensate the complainant for losses sustained,' while criminal contempt sanctions are intended 'to vindicate the authority of the court by punishing the contemnor and deterring future litigants' misconduct." *Bradley,* 378 F. 3d at 378 (quoting *Buffington,* 913 F. 2d at 133). Thus, "[i]f the relief provided is a fine, it is remedial when it is paid to the complainant, and punitive when it is paid to the court, though that would be payable to the court is also remedial when the defendant can avoid paying the fine simply by performing the affirmative act required by the court's order." *Hicks,* 485 U.S. at 631-32; *see also Buffington,* 913 F. 2d at 133. The distinction is important, because if a sanction is in essence for criminal contempt, the party has a Constitutional right to certain protections, such as the right to be prosecuted by a independent prosecutor. *Bradley,* 378 F. 3d at 379.

Accordingly, even where a district court fines a party ostensibly pursuant to its inherent authority or a Federal Rule of Civil Procedure, the Fourth Circuit has vacated the order if the fine is effectively a criminal contempt sanction that was imposed without basic procedural protections. For example, in *Bradley,* the Fourth Circuit vacated a district court order imposing substantial monetary fines against a defendant and its attorney pursuant to the court's inherent authority and Rule 37. The Fourth Circuit concluded that fines were criminal in nature because (1) they were payable to the court rather than the complaining party; (2) they were not conditioned on compliance with a court order; (3) they were not tailored to compensate the complaining party, and (4) they were imposed for punitive purposes. 379 F. 3d at 378-79. The Fourth Circuit reached the same

10

conclusion in *Buffington*, vacating a district court's order imposing fines on two attorneys violating a discovery order–issued pursuant to its inherent power and authority under Federal Rule of Civil Procedure 37–because the fines were payable to the court, not conditioned on compliance with a court order, and not tailored to compensate a complaining party. 913 F. 2d at 133-35. Additionally, the substance of the proceedings, and the court's express statement of its reason for imposing sanctions disclosed "a predominately punitive intent." *Id.* at 135. *See also Hathcock v. Navistar Int'l Transp. Corp.*, 53 F. 3d 36, 42 (4th Cir. 1995) ("This court has recognized that a Rule 37 fine is effectively a criminal contempt sanction, requiring notice and opportunity to be heard.").[4]

Applying the analysis mandated by the Fourth Circuit here, the undersigned must conclude that the $200 fine imposed on Schwei is effectively a criminal contempt sanction. The fine is payable to the court, and not tailored to compensate any party–or even the court–for expenses. Although Judge Webb concluded that the fine was civil in nature because his February 14, 2013, Order warned the parties that sanctions may be imposed if they failed to submit a pretrial order, such reasoning is not compatible with the Fourth Circuit's analysis in *Buffington*. In that case, the Fourth

---

[4] In this regard, the Fourth Circuit's analysis may diverge from that of at least one other jurisdiction, the First Circuit. That court has stated that it has "no hesitation in endorsing the use of punitive monetary sanctions" under Rule 16(f), seemingly without a finding of contempt. *Media Duplication Servs.,Ltd. v. HDG Software, Inc.*, 928 F. 2d 1228, 1242 (1st Cir. 1991). This court does not believe the Fourth Circuit would follow suit, however. Notably, and as recognized by the First Circuit in *Media Duplication Services*, Rule 16(f) was added in 1983 to reflect the existing practice of a court relying on its inherent authority to impose sanctions for failure to abide by pretrial orders. *Id.* at 1242 n.12. In other words, "Rule 16(f) makes explicit the court's discretionary power to control its docket, which is a power that has long been recognized as an inherent attribute of federal district courts." GREGORY P. JOSEPH, SANCTIONS: THE FEDERAL LAW OF LITIGATION ABUSE, § 37(A) (4th ed. 2008). Given that the Fourth Circuit, in *Bradley* and *Buffington*, vacated sanction orders issued, in part, pursuant to district courts' inherent authority, it seems unlikely that Judge Webb's reliance on Rule 16(f) would change the Fourth Circuit's analysis in this case.

11

Circuit observed that a fine was not conditioned on compliance with a court order where it was impossible, post-trial, for the sanctioned attorneys to comply with a pre-trial discovery order or Rule 26(e)'s duty to supplement. 913 F. 2d at 134. Here, too, it was impossible for Schwei to comply with Judge Webb's February 12, 2013, Order at the time Judge Webb imposed sanctions: the case had been remanded. Accordingly, the $200 fine cannot be considered to be conditioned on compliance with Judge Webb's Order, and must be considered criminal in nature because Schwei has no opportunity to purge the fine. *Cf. Int'l Union, United Mine Workers of America v. Bagwell*, 512 U.S. at 829 (explaining that "a 'flat, unconditional fine' totaling even as little as $50 announced after a finding of contempt is criminal if the contemnor has no subsequent opportunity to reduce or avoid the fine through compliance"). Moreover, Judge Webb's reasoning that the "notice of potential sanctions was expressly conditioned upon and intended to coerce the parties' compliance with the pretrial order" could turn *any fine* imposed by the court into a civil sanction. *Id.* at 836-37 (declining "to conclude that the mere fact that the sanctions [for violating an injunctive order] were announced in advance rendered them coercive and civil as a matter of constitutional law" and reasoning that the party's "ability to avoid the contempt fines was indistinguishable from the ability of any ordinary citizen to avoid a criminal sanction by conforming his behavior to the law"). Under the facts presented, the undersigned cannot conclude that the character of the relief–the $200 fine–is civil in nature.

Furthermore, the proceedings also evidence a punitive intent. It cannot be disputed that the proceedings were conducted for the purpose of vindicating the authority of the court and punishing Schwei and possibly the other attorneys. *See Rouseco* docket, Transcript of March 19, 2013, Hearing [DE-85] p. 9 (summoning the United States Attorney to the pretrial conference hearing and stating,

12

"I'd like you to explain to me why your office has disregarded an order of this court and the Local Rules of this court. I find it contemptible . . . ."). Under the analysis set forth in *Buffington* and *Bradley*, the $200 fine must be regarded as criminal in nature.

Because it was criminal in nature, the fine was effectively a criminal contempt sanction. As the Fourth Circuit has observed, "[a]t a minimum, criminal contempt defendants have the right to receive notice of the criminal nature of the charges, and to be prosecuted by an independent prosecutor, and to have their guilt determined 'beyond a reasonable doubt.' " *Bradley*, 378 F.3d at 379 (citations omitted). Schwei was not afforded those protections.[5] Under these circumstances, Judge Webb's May 17, 2013 Order must be VACATED.[6] The court is satisfied that this lengthy exercise and expenditure of resources will serve to deter Schwei and other members of his office from engaging in the conduct which gave rise to this proceeding in the future, and for that reason, the court declines to pursue these proceedings further. Accordingly, the Clerk of Court is DIRECTED to close this case.

In so ruling, the undersigned takes pains to stress two matters. First, the undersigned agrees with Judge Webb that in most instances, magistrate judges have authority to rule on motions for sanctions, so long as the sanction imposed is not dispositive of a claim or defense. *See, e.g., Powell v. Town of Sharpsburg*, No. 4:06-CV-117-F, 2009 WL 863348, at *6 (E.D.N.C. March 27, 2009) ("If a party moves for discovery sanctions, the sanction chosen by the magistrate judge, rather than the sanction sought by the party, determines whether the magistrate judge's decision is dispositive.")

---

[5] Additionally, as Schwei notes, a magistrate judge lacks statutory authority to impose criminal contempt sanctions under the circumstances presented here.

[6] The undersigned declines to construe the order as a recommendation issued pursuant to 28 U.S.C. § 636(b)(1)(B).

13

(citing 12 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 3068.2). This order should not be construed as viewing a magistrate judge's authority limited in that respect.

Second, the undersigned stresses that *all* orders of this court, whether issued by Article III district judges or magistrate judges, must be obeyed. In enforcing obedience, however, this court is bound by the Constitution and the precedent of the Fourth Circuit.

### III. CONCLUSION

For the foregoing reasons, the May 17, 2013 Sanctions Order Imposing Sanctions [DE-25] is VACATED. The Clerk of Court is DIRECTED to close this case.

SO ORDERED.

This the 25th day of June, 2013.

*James C. Fox*
JAMES C. FOX
Senior United States District Judge

14

Case 4:13-mc-00002-F   Document 26   Filed 06/25/13   Page 14 of 14